Marcus JONES, Willie B. Hodge, Clifton Nickles and Clarence L. Irving, Plaintiffs,

v.

**LEE WAY MOTOR FREIGHT, INC.,** Defendant.

Civ. No. 68–33.

United States District Court
W. D. Oklahoma.

June 23, 1969.

E. Melvin Porter, Oklahoma City, Okl., William L. Wood, Houston, Tex., for plaintiffs.

Richard G. Taft and John B. Dudley, of McAfee, Dudley, Taft, Cates & Mark, Richard H. Champlin, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

Plaintiffs' action is based on Defendant's alleged commission of an unlawful employment practice prohibited by 42 U.S.C. § 2000e-2(a) (1) and (2) (Act). Plaintiffs, who are negroes, are employees of Defendant at Houston, Texas, as City Drivers. They allege that they sought a transfer from such job to that of Over-the-Road or Line Driver which was allegedly refused by Defendant because of their race and color. Defendant denies that the requested transfers from one job to another was refused because of race or color. It contends that the refusal was pursuant to a long established business policy of forbidding transfers between the two job classifications and that such Company policy has been consistently applied since 1957 to all employees, regardless of race or color. The case has been submitted for determination on a stipulation of facts and briefs.

Section 2000e-2, Title 42 U.S.C.A., provides in pertinent part as follows:

"(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

\* \* \* \* \* \*

(j) Nothing contained in this subchapter shall be interpreted to require any employer, employment agency, labor organization, or joint labor-management committee subject to this subchapter to grant preferential treatment to any individual or to any group because of the race, color, religion, sex, or national origin of such individual or group on account of an imbalance which may exist with respect to the total number or percentage of persons of any race, color, religion, sex, or national origin employed by any employer, referred or classified for employment by any employment agency or labor organization, admitted to membership or classified by any labor organization, or admitted to, or employed in, any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race, color, religion, sex, or national origin in any community, State, section, or other area, or in the available work force in any community, State, section, or other area."

The facts show that the Defendant has had a Company policy since 1957 of prohibiting all transfers from City Driver to Over-the-Road Driver and vice versa and that this policy has been uniformly applied by Defendant since that time, with one exception. The exception arose because of a mistake by the Defendant's Terminal Manager at San Antonio in

failing to follow the Company's published no-transfer policy. Upon learning of this violation of Company policy, the Defendant ordered that the transferred employee be transferred back but Union grievance action interceded and prevented correction of the mistake. It further appears that there have been no deviations in the application of this policy for reasons of race and the same has been applied to whites and negroes alike; that whites as well as negroes have been denied such transfers under this policy. The reasons given by Defendant for the policy is the difficulty of adjustment to Over-the-Road work by City employees and vice versa and the expense of retraining caused by such transfers. This is based on Company experience revealing that City Drivers do not stay with Over-the-Road driving because it takes them from home and Over-the-Road Drivers are dissatisfied with the confinement of City work. And retraining is required upon such transfers being made. It does not appear that the policy is one that is discriminatory to Plaintiffs because they are negroes, since the policy prohibits any transfers from the City Driver classification to the Over-the-Road classification and vice versa regardless of race or color. There is no showing that any City Drivers, either negro or white, with the one exception above mentioned, have been permitted by Defendant since 1957 to make the transfer sought by Plaintiffs.

■ The Defendant's policy of prohibiting transfers from City Driver to Over-the-Road Driver is, therefore, a valid and bona fide departmental operation with valid restrictions on departmental transfers not based or applied on race, but established as a result of other rational and bona fide considerations.[1]

■ Plaintiffs state in their reply brief that no negroes had been hired as Over-the-Road Drivers as of the institution of this suit and contend that such failure to hire negroes in an all white department is a discriminatory employment practice as to Plaintiffs and those similarly situated.[2] However, the hiring of negroes for a particular job category is clearly not contemplated by the Act. Section 2000e-2(j) provides that an employer is not required to grant preferential treatment to any individual or to any group because of race on account of an imbalance which may exist with respect to the total number or percentage of persons of any race employed by an employer. United States v. H. K. Porter Company, 296 F.Supp. 40 (N.D.Ala.S.D. 1968).[3]

The Court, therefore, finds and concludes from the evidence that the Defend-

---

1. The instant case is distinguished from Quarles v. Philip Morris, Inc., D.C., 279 F.Supp. 505, cited in Plaintiffs' brief. In the instant case, the policy is a "no-transfer" policy. In Quarles, the policy permitted transfers, but the departmental seniority systems imposed a loss of employment seniority on one who sought and received a departmental transfer. 279 F.Supp. 505 at p. 513. Likewise, in the case of Bing v. Roadway Express, Inc., and International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America, USDC, N.D.Ga., Atlanta Div., CA No. 11144 (February 7, 1968), cited in Plaintiffs' brief, transfers were allowed from the "in town driver" classification to the "on the road driver" classification but seniority rights were not transferrable. Summary judgment was denied in the latter case but from the material furnished the Court by Plaintiffs, the result of the case when heard on its merits is not known.

2. Defendant states that it has been able to employ two negro Over-the-Road Drivers, has diligently tried but without success to find qualified negroes to operate Over-the-Road equipment despite advertising and participation in government sponsored programs.

3. This case provides:
 "It was similarly reiterated in further chapters of the legislative history that 'The proponents of this bill have carefully stated on numerous occasions that title VII does not require an employer to achieve any sort of racial balance in his work force by giving preferential treatment to any individual or group' * * *." 296 F.Supp. 40, at p. 69.

ant has not violated the Act, as claimed by Plaintiffs, and this action should be dismissed. Counsel for Defendant will prepare an appropriate judgment based on the foregoing.