Emogene Rowlett SARACINI, Plaintiff,

v.

MISSOURI PACIFIC RAILROAD COMPANY, Defendant.

No. LR 72 C 248.

United States District Court, E. D. Arkansas, W. D.

May 12, 1977.

James E. Youngdahl of Youngdahl, Larrison & Agee, Little Rock, Ark., for plaintiff.

Herschel H. Friday and B. S. Clark, Little Rock, Ark., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge (Sitting by Designation).

This is an action arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sections 2000e *et seq.* Specifically, plaintiff alleges a violation of 42 U.S.C. section 2000e–2(a).[1] She alleges that defendant denied her a promotion to the position of secretary to the Arkansas Division Superintendent of the Missouri Pacific Railroad Company because of her sex. The complaint prays that plaintiff be awarded the desired position, back pay, appropriate injunctive relief, and costs and attorney's fees. Jurisdiction in this court is based on 42 U.S.C. sections 2000e–5(e) and 2000e–5(f), and on 28 U.S.C. section 1343(4).

Plaintiff, Emogene Rowlett Saracini, has been employed by the defendant, Missouri Pacific Railroad Company (MoPac), since April 9, 1951. She has worked in various localities with MoPac, primarily as a steno-clerk. Since 1966 her position has been General Clerk in the office of the Little Rock General Manager.

In September of 1969, the secretary to the Arkansas Division Superintendent was promoted. Mrs. Saracini was asked by Mr. A. W. Rees, the superintendent, to fill the position temporarily until another secretary could be found.[2] She worked in this capacity for two weeks, until Mr. David L. Harrison was selected for the post. During this two week period, Mrs. Saracini asked Mr. Rees for a permanent promotion to the position of secretary. Rees refused, stating that he had to have a man for the job.[3] Mrs. Saracini filed a charge with the Equal Employment Opportunity Commission. A right to sue letter was issued, and this action commenced. Trial was had to the court on May 4–5, 1976.

*Burden of Proof*

In a Title VII suit the plaintiff has the initial burden of proof to establish a prima facie case of discrimination.

---

1. 42 U.S.C. section 2000e–2(a) provides:

   It shall be an unlawful employment practice for an employer—
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . or
   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . sex . . . . .

2. There is some dispute between the parties concerning Mrs. Saracini's precise status at the time she was asked to fill the position of secretary to the Arkansas Division Superintendent. This court finds from the facts presented that Mrs. Saracini's placement in this particular position was merely a limited, temporary assignment; and that at no time during this period did she exercise the full powers or authority of a secretary to a division superintendent.

3. There is controversy between the parties as to what Mr. Rees meant by this statement, which will be discussed *infra*. Both parties concede, however, that a statement to this effect was made.

This may be done by showing (i) that he belongs to a . . . minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Gilmore v. Kansas City Terminal Ry. Co.,* 509 F.2d 48, 51 (8th Cir. 1975). Although originally articulated in a race discrimination case, these factors are also applicable to cases alleging discrimination based on sex." *See, e. g., East v. Romine, Inc.,* 518 F.2d 332 (5th Cir. 1975).

■ Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the employer carries this burden, and rebuts the prima facie case, the burden then returns to the employee to demonstrate that the employer's reasons for rejection were in fact a pretext for unlawful discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The ultimate burden of proof rests with the plaintiff. *Stevens v. Junior College District of St. Louis,* 548 F.2d 779 (8th Cir. 1977)· *Naraine v. Western Electric Co., Inc.,* 507 F.2d 590 (8th Cir. 1974).

### The Prima Facie Case

■ To establish her prima facie case of discrimination, Mrs. Saracini introduced

Equal Employment Opportunity Employee Information Reports. These reports demonstrate that there were very few women employed by MoPac in positions higher than office and clerical. While the figures by themselves are not very enlightening or persuasive,[4] this court does find that the statistics create an inference that women are discriminated against in promotion to higher level positions with defendant. *Gilmore v. Kansas City Terminal Ry. Co.,* 509 F.2d 48 (8th Cir. 1975); *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir. 1970). This inference is further supported by the fact that at trial, MoPac at no time attempted to disprove this inference. This court is satisfied that plaintiff has demonstrated a prima facie case of discrimination against women as a group by MoPac.

To prove discrimination as to herself, however, plaintiff must show more than the fact that she is a woman. She must also establish that she applied for a job for which she was qualified, that she was rejected despite her qualifications, and that the position which she sought remained open after her rejection, with the employer seeking applicants from persons of similar qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The evidence is clear that plaintiff applied for the position in question, that her application was rejected, and that the position was subsequently filled by another. The question which remains is whether plaintiff was qualified for the position.

■ Title VII is designed to eliminate discrimination; it does not require that unqualified persons be hired, retained, or promoted. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Thompson v. McDonnell Douglas Corp.,* 552

---

4. The statistics presented by plaintiff consist merely of raw numbers of persons employed, broken down by sex, race, and so forth. There was nothing presented to demonstrate the number of women in the geographical area available for employment, nor any figures showing the numbers of applicants for the position in question, or any other position. Defendant, however, has not seriously contested the statistics, nor the offer of the statistics on the issue of the prima facie case of discrimination.

F.2d 220 (8th Cir. 1977); *Sabala v. Western Gillette, Inc.,* 516 F.2d 1251 (5th Cir. 1975); *Adams v. Texas & Pacific Motor Transport Co.,* 408 F.Supp. 156 (E.D.La.1975). After examining the evidence in this case, this court concludes that plaintiff has demonstrated that she was at least presumptively qualified for the position which she sought. Mr. Rees, the superintendent, stated that plaintiff "probably was qualified" for the position. He testified that in his opinion Mrs. Saracini was a very competent steno, and a "pretty good clerk." She was proficient at both typing and shorthand. Although defendant has introduced evidence of nondiscriminatory justification for its actions, *see Henry v. Ford Motor Co.,* 553 F.2d 46 (8th Cir. 1977), this court finds that plaintiff has established a prima facie case of discrimination as to herself.

### Defendant's Case

■ Because the plaintiff has established a prima facie case of discrimination, the burden is now on the defendant to come forward with a legitimate justification for its actions. It is the opinion of this court that defendant must meet this burden on two fronts. Initially, it must demonstrate that its promotion procedure, as applied to the position in question in this case, is nondiscriminatory. Secondly, it must show that the promotion procedure did not discriminate against plaintiff. *See Peltier v. Fargo,* 533 F.2d 374 (8th Cir. 1976). These questions will be examined individually.

### A. The Promotion Procedure

The evidence presented at trial established that the method of promotion to the position of secretary to a division superintendent was entirely dependent upon the individual superintendent involved. Mr. Rees viewed the position as appointive, and stated that "Nobody makes application for that job. There's no applicants at all. I choose who I want." It is also clear that there was no written description of the job available, that no notices of vacancy were posted, and that there were no standards which superintendents were required to apply in evaluating persons for the job.

■ It is well settled that "subjective standards" applied to the evaluation of employees, whether for hiring or promotion, are subjected to close scrutiny by the courts. *United States v. Hazelwood School Dist.,* 534 F.2d 805 (8th Cir. 1976); *Rogers v. International Paper Co.,* 510 F.2d 1340 (8th Cir. 1975), *vacated and remanded on other grounds,* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975); *United States v. N. L. Industries, Inc.,* 479 F.2d 354 (8th Cir. 1973); *see also Stewart v. General Motors Corp.,* 542 F.2d 445 (7th Cir. 1976); *Robinson v. Union Carbide Corp.,* 538 F.2d 652 (5th Cir. 1976); *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976); *Causey v. Ford Motor Co.,* 516 F.2d 416 (5th Cir. 1975); *Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437 (5th Cir. 1974), *cert. denied* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974); *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir. 1972). The law in the Eighth Circuit "is clear that employment decisions based on subjective standards carry little weight in rebutting charges of discrimination." *United States v. Hazelwood School Dist.,* 534 F.2d 805, 813 (8th Cir. 1976).

■ After a careful consideration of the evidence presented, this court finds that MoPac's promotion procedure in this case is violative of Title VII. Although defendant has been able, through various witnesses, to establish certain qualifications which would be required of a person seeking this position, this does not remove the fact that the final decision under the present procedure rests in the unguided hand of the particular superintendent involved. As the court in *Rowe v. General Motors Corp.* observed:

> All we do today is recognize that promotion/transfer procedures which depend almost entirely upon the subjective evaluation and favorable recommendation of the immediate foreman are a ready mechanism for discrimination . . . much of which can be covertly concealed and, for that matter, not really known to management.

457 F.2d 348, 359 (5th Cir. 1972); [5] *see also Rogers v. International Paper Co.,* 510 F.2d 1340, 1345–46 (8th Cir. 1975), *vacated and remanded on other grounds* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975). The justification for this concern is well illustrated in the instant case, where the testimony of the superintendent, Mr. Rees, demonstrates at least some bias against both women and blacks. Reliance on solely subjective measures of qualification allows the person conducting the analysis to inject his own impermissible biases, whether intentionally or unintentionally, into the determination of the applicant's qualifications.

It must be recognized that the amount of subjectivity involved in the decision-making process may vary with the type of position involved. *Spurlock v. United Airlines, Inc.,* 475 F.2d 216 (10th Cir. 1972); *McAdory v. Scientific Research Instruments, Inc.,* 355 F.Supp. 468 (D.Md.1973). It is clear, however, that higher level jobs, such as the one involved here,[6] are not immune from analysis under Title VII and the standards announced in *Rowe. Rogers v. International Paper Co.,* 510 F.2d 1340 (8th Cir. 1975), *vacated and remanded on other grounds* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975); *Gilmore v. Kansas City Terminal Ry. Co.,* 509 F.2d 48 (8th Cir. 1975); *see also Stewart v. General Motors Corp.,* 542 F.2d 445 (7th Cir. 1976). This court finds that some subjective standards would be essential to determining the qualifications of a person seeking the position of secretary to a division superintendent with MoPac. The subjective standards to be used, however, must be nondiscriminatory, and related to job performance, and the applicants must be

made aware of them in advance. *United States v. Hazelwood School Dist.,* 534 F.2d 805 (8th Cir. 1976). Clearly these criteria were not met by the method employed by MoPac in this case. For the reasons discussed above, the promotion procedure is held to violate Title VII.

### B. *Mrs. Saracini's Promotion*

The mere fact that MoPac's promotion procedure does not meet the requirements of Title VII does not necessitate a finding of discrimination as to Mrs. Saracini. *See Fogg v. New England Telephone & Telegraph Co.,* 346 F.Supp. 645 (D.N.H.1972). It must still be demonstrated that the promotion procedure, as applied to plaintiff, was discriminatory.

This court finds that defendant did discriminate against Mrs. Saracini in considering her for promotion to the position of secretary to the Arkansas Division Superintendent. This is not a case where plaintiff merely alleges that she was told that the job was a "man's job." *See, e. g., Cedeck v. Hamiltonian Federal Savings & Loan Ass'n.,* 551 F.2d 1136 at 1138 n. 2 (8th Cir. 1977). Here the evidence shows that defendant not only admits that particular statement; the hiring superintendent, Mr. Rees, stated that sex would in any event be a consideration in his decision on who to hire for the position.

Under Title VII, plaintiff need not establish that sex was the sole basis for the refusal to hire or promote. *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1198 (7th Cir. 1971), *cert. denied* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). The Second

---

5. The court in *Rowe* found that the promotion procedure violated Title VII in several particulars:

(i) The foreman's recommendation is the indispensable single most important factor in the *promotion process.*

(ii) Foremen are given no written instructions pertaining to the qualifications necessary for promotion. (They are given nothing in writing telling them what to look for in making their recommendations.)

(iii) Those standards which were determined to be controlling are vague and subjective.

(iv) Hourly employees are not notified of promotion opportunities nor are they notified of the qualifications necessary to get jobs.

(v) There are no safeguards in the procedure designed to avert discriminatory practices. 457 F.2d 348, 358–59 (5th Cir. 1972). The procedure in the instant case has the same fundamental defects.

6. This court views the position of secretary to a division superintendent as a higher level job in light of the testimony that the position is considered as a stepping stone to management positions within MoPac's organization.

Circuit Court of Appeals, in a case with remarkable factual similarities to the instant case, held that failure to consider a woman for promotion, "not simply because she was not qualified but also because she was a woman," constituted impermissible sex discrimination. *Gillin v. Federal Paper Board Co., Inc.*, 479 F.2d 97, 102 (2d Cir. 1973). In *Gillin*, the plaintiff claimed, in part, that the defendant had discriminated in failing to consider her for promotion. The trial court held that the person ultimately hired for the position had qualifications far superior to those of the plaintiff, and that this fact cured any possible claim of discrimination. The Court of Appeals reversed, finding that the failure to consider the plaintiff partially on the basis of sex was a sufficient basis for a finding of unlawful discrimination. *Cf. Fogg v. New England Telephone & Telegraph Co.*, 346 F.Supp. 645, 649 (D.N.H.1972). In *Gillin*, as in the instant case, the defendant did not attempt to justify its actions by asserting a "bona fide occupational qualification" defense. The use of sex as a criterion for employment without any demonstrable justification was held to be precisely the mischief at which Title VII was aimed. *Gillin v. Federal Paper Board Co., Inc.*, 479 F.2d 97, 101 (2d Cir. 1973); *see also Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir. 1971), *cert. denied* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

This court finds that the evidence demonstrated a violation of the dictates of Title VII in this case. In reaching this conclusion, it is not necessary to consider whether absent considerations of sex, Mrs. Saracini would have been awarded the position. The fact that sex was an admitted basis on which the employer's decision was made, and that there was no justification for use of this factor, is sufficient to establish discrimination as a matter of law.

### Remedies

Plaintiff has requested that this court award her the position of secretary to the Arkansas Division Superintendent, back pay, injunctive relief, and costs and attorney's fees. These remedies will be considered individually.

### A. Injunctive Relief

██ 42 U.S.C. section 2000e–5(g) provides:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate . . . . . .

The "intent" requirement of this section is met by a showing that the employment practice was not accidental. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Rogers v. International Paper Co.*, 510 F.2d 1340, 1344 (8th Cir. 1975), *vacated and remanded on other grounds* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975). The evidence in this case establishes that MoPac was intentionally engaged in the promotion procedure in question, and that this procedure was violative of Title VII in itself and as applied to plaintiff.

Plaintiff has requested that defendant be enjoined from further violations of Title VII. Despite the fact that this case was not brought as a class action, this court is of the opinion that general relief would be appropriate. Plaintiff has requested such relief for herself. *Cf. Muller v. United States Steel Corp.*, 509 F.2d 923 (10th Cir. 1975), *cert. denied* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed. 2d 41 (1975). Title VII cases inherently involve discrimination against a class characteristic, *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 428 (8th Cir. 1970), and under this reasoning, courts have upheld class-type injunctive and affirmative relief in cases by individual plaintiffs. *See, e. g., Peltier v. Fargo*, 533 F.2d 374 (8th Cir. 1976) (affirmative action plan imposed by district court voided necessity of injunctive relief by Court of Appeals); *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir. 1971), *cert. denied* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543

(1971) (court holds that district court has special responsibility to devise remedies to effectuate the policies underlying the Act).

■ This court will enjoin defendant from further use of subjective standards of selection for the position of secretary to a division superintendent, and will require defendant to formulate objective standards on which such decisions must be based. These standards shall meet the following requirements:

(1) MoPac shall formulate, in writing, reasonably objective standards of qualification to be applied to persons seeking positions as secretaries to division superintendents. These standards shall be provided to each superintendent, and shall be provided to any person seeking to apply for the position;

(2) MoPac shall publish notification of all openings in these positions, and all persons who deem themselves qualified for the positions shall be permitted to apply;

(3) MoPac shall evaluate all applications without regard to the sex of the applicant; and

(4) Secretaries to division superintendents must be selected on the basis of merit as measured by reasonably objective standards.

This court realizes that some subjectivity will still be an essential part of the decision-making process, but this subjectivity must be confined to previously-announced criteria which are related to job performance. *United States v. Hazelwood School Dist.,* 534 F.2d 805, 813 (8th Cir. 1976); *see also United States v. N. L. Industries, Inc.,* 479 F.2d 354, 377–78 (8th Cir. 1973).

This court will not enter a separate order in this regard concerning Mrs. Saracini. In light of the findings contained *infra,* the general relief provided by this court will sufficiently protect her interests.

### B. *The Position*

■ This court finds that Mrs. Saracini is not entitled to be placed in the position of secretary to the Arkansas Division Superintendent at this time. There is no evidence that the position is available at this time, and, as will be discussed, Mrs. Saracini would not have been entitled to the job at the time she originally applied. The general relief provided above, however, would apply to her, and she would be entitled to make application for the position at any time in the future. At that time, MoPac would be required to judge her qualifications according to the prescribed objective standards.

### C. *Backpay*

Mrs. Saracini has also requested that this court award her backpay from the time she was refused the job of secretary to the Arkansas Division Superintendent. This court declines to grant the requested relief.

■ The Supreme Court, in a recent pronouncement on this question, has stated that

given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.

*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). If a court declines to award backpay, it must carefully articulate its reasons. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, n. 14, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

One reason which has been held to justify a denial of backpay has been explained by the Sixth Circuit Court of Appeals, which stated that

if one is unlawfully discriminated against in violation of Title VII, an employer need not reinstate him or grant back pay if it can be shown that the employer also had a lawful nondiscriminatory motivation for his actions which when considered by itself would have caused the same result as his discriminatory purpose. But where it can be shown that discrimination . . . was, in part, a *causal*

*factor* in a discharge or refusal to hire the aggrieved party, the aggrieved party is statutorily entitled to damages of lost compensation.

*King v. Laborers International Union of North America, U.L. No. 818,* 443 F.2d 273, 278–79 (6th Cir. 1971) (emphasis added); *see also Gillin v. Federal Paper Board Co., Inc.,* 479 F.2d 97, 102–03 (2d Cir. 1973). Because this court finds that Mrs. Saracini would not have been awarded the position on the date in question, even if her sex had not been considered, this court feels that an award of backpay would be unjust. *Green v. Missouri Pacific Railroad Co.,* 523 F.2d 1290 (8th Cir. 1975).

Defendant introduced considerable evidence at trial concerning the "real reasons" for not giving Mrs. Saracini the job she requested. As previously indicated, MoPac discriminated against Mrs. Saracini when the initial employment determination was made, in that the superintendent, Mr. Rees, made sex a consideration without justification. This court finds, however, that defendant has demonstrated to the court's satisfaction that even had sex not been a factor in the decision, Mrs. Saracini would not have been awarded the job.

The defendant has asserted, and the court specifically finds, that the personality of the person involved was a major consideration in the hiring decision. The person serving as the secretary to a division superintendent was required to have extensive contact with the public, other employees of MoPac, both superior and subordinate, and with the various companies and organizations with which MoPac did business. It appears that the secretary, in effect, acted as the alter ego of the superintendent to a large extent. Mr. Rees testified, and this court finds, that he had a long experience working with, or at least in the same office as, Mrs. Saracini. He stated that her personality was abrasive, and that other persons who had contact with her were of the same opinion. From her demeanor in the courtroom, this court believes that the assertions made by defendant as to plaintiff's character and personality are true.

Defendant has also asserted that another qualification required of a secretary to a division superintendent is the ability to exercise accurate, independent judgment. Although plaintiff asserts a vast amount of experience in this regard, the testimony convinces the court that her primary prior experience had been with clerical tasks. It also became evident that plaintiff had a difficult time answering questions directly, and with following instructions.

What this court finds is that absent sex as a consideration, and despite plaintiff's prima facie qualifications for the position, the defendant had a valid, nondiscriminatory reason for refusing to promote her to the desired position. Courts generally agree that personality is a valid factor which may be considered in employment decisions. *See, e. g., Cedeck v. Hamiltonian Federal Savings & Loan Ass'n.,* 551 F.2d 1136 (8th Cir. 1977); *Thompson v. McDonnell Douglas Corp.,* 552 F.2d 220 (8th Cir. 1977); *Stevens v. Junior College District of St. Louis,* 548 F.2d 779 (8th Cir. 1977); *Bradington v. International Business Machines Corp.,* 360 F.Supp. 845 (D.Md.1973), *aff'd* 492 F.2d 1240 (4th Cir. 1974); *Frockt v. Olin Corp.,* 344 F.Supp. 369 (S.D.Ind.1972); *Barnes v. Lerner Shops of Texas, Inc.,* 323 F.Supp. 617 (S.D.Tex.1971). Under the facts in this case, plaintiff has not presented sufficient evidence to convince this court that sex was a *causal* factor in her denial of the promotion. Furthermore, this court finds that defendant has shown by clear and convincing evidence that plaintiff would not have been promoted even absent considerations of sex. *See Cooper v. Allen,* 467 F.2d 836, 840 (5th Cir. 1972). Because this court finds that plaintiff would not have been awarded the job had only nondiscriminatory standards been applied to her application, she is not entitled to an award of backpay.

### D. *Attorney's Fees*

█ Finally, plaintiff has requested that the court award her a reasonable attorney's fee in this case. Attorney's fees are specifically authorized for Title VII actions by 42 U.S.C. section 2000e–5(k), and may be

awarded to the prevailing party in the discretion of the court. Although plaintiff has not prevailed on all points in her case, this court feels that she is entitled to a reasonable attorney's fee for bringing to light discriminatory practices of the defendant. *Peltier v. Fargo*, 533 F.2d 374 (8th Cir. 1976); *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970).

*Conclusion*

In light of the above memorandum decision, defendant will prepare, in writing, a list of reasonably objective standards to be applied by all persons selecting applicants for promotion to the position of secretary to a division superintendent. Plaintiff's counsel will submit a proposed statement of fees and costs to this court, with a copy to counsel for defendant, as soon as possible; and will draft an appropriate order in light of the above memorandum.

The above memorandum decision constitutes the findings of fact and conclusions of law of this court pursuant to Rule 52 of the Federal Rules of Civil Procedure.